IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT BRYANT,                          :
                                        :
        Plaintiff,                      :
                                        :
vs.                                     :
                                        :    CIVIL ACTION 15-0167-M
CAROLYN W. COLVIN,                      :
Social Security Commissioner,           :
                                        :
        Defendant.                      :


MEMORANDUM OPINION AND ORDER


In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for disability insurance benefits (Docs. 1, 13). The parties filed written consent and this action was referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 18). Oral argument was waived in this action (Doc. 20). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was forty years old, had completed some college education (Tr. 74), and had previous work experience as a heating and air installer and servicer (Tr. 82). Bryant alleges disability due to multi-level degenerative disc disease of the lumbar spine with facet spondylosis and chronic right knee pain secondary to a partial tear of the lateral meniscus and medium meniscus (Doc. 12).

Plaintiff applied for disability benefits on September 28, 2011; disability is asserted as of December 10, 2010 (Tr. 17; *see also* Tr. 38, 181-87). An Administrative Law Judge (ALJ) denied benefits, determining that although Bryant could not return to his past relevant work, there were specific light and sedentary jobs that he could perform (Tr. 17-26). Plaintiff requested review of the hearing decision (Tr. 10-13), but the Appeals Council denied it (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Bryant alleges that:  (1) The ALJ did not properly consider the conclusions of his treating physician; (2) the ALJ violated the HALLEX in improperly taking telephonic testimony from a Medical Expert (hereinafter *ME*); and (3) the opinions of the ME were based on an incomplete record (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 14).  The Court will now summarize the relevant evidence of record.

On July 29, 2010, Stephen A. Roberts, D.O., examined Bryant for an injury to his back and knees after falling from a ladder; Plaintiff had mid-to-low back pain with left knee pain and popping in the right knee (Tr. 309-12).  On September 2, following a medication regimen of Zanaflex,[1] Skelaxin,[2] a Medrol Dosepak,[3] Mobic,[4] Ultracet,[5] and Robaxin,[6] as well as physical

---

[1]**Error! Main Document Only.***Zanaflex* "is a short-acting drug for the acute and intermittent management of increased muscle tone associated with spasticity."  *Physician's Desk Reference* 3204 (52nd ed. 1998).

[2]**Error! Main Document Only.***Skelaxin* is used "as an adjunct to rest, physical therapy, and other measures for the relief of discomforts associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 830 (52nd ed. 1998).

[3]A *Medrol Dosepak* (methylprednisolone) is a steroid that prevents the release of substances in the body that cause inflammation.  *See* http://www.drugs.com/mtm/medrol-dosepak.html

[4]**Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis.  *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[5]**Error! Main Document Only.***Ultracet* is made up of acetaminophen and tramadol and is used for the short-term (5 days or less) management of pain.  *See* http://health.yahoo.com/drug/d04766A1#d04766a1-whatis

[6]**Error! Main Document Only.***Robaxin* "is indicated as an adjunct to rest, physical therapy, and other measures for the relief of

therapy, Roberts ordered an MRI that showed a large horizontal cleavage tear of the lateral meniscus and a partial meniscectomy of the medial meniscus in the right knee (Tr. 298-308, 314).  On September 10, 2010, Dr. Roberts noted normal range of motion (hereinafter *ROM*) in the thoracic spine with pain in both the thoracic and lumbar spine (Tr. 295-96).  On September 29, Bryant stated that although there had been some improvement with medication, it had stopped and his back pain and stiffness persisted (Tr. 286-89, 313).  A lumbar spine MRI showed the following:  (1) mild desiccation changes at L4-5 and L5-S1 with moderate loss of disc height at L5-S1; (2) mild broad-based disc bulge at L3-4 without evidence of neural impingement; and (3) broad-based disc bulge with central disc protrusion at L4-5, resulting in moderate crowding of the descending nerve roots, accentuated by a congenitally narrowed spine; there was crowding of the descending nerve roots but no definite impingement (Tr. 313, 358).

On September 9, Dr. Scott Atkins, Orthopaedic Surgeon, examined Bryant who complained of right lateral knee pain with popping, intermittent swelling, and intermittent severe pain; the Doctor noted tenderness over the lateral joint line, pain, and trace effusion (Tr. 257, 266).  After reviewing the MRI,

---

discomforts associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 2428 (52nd ed. 1998).

arthroscopic surgery on the right knee with partial lateral
meniscectomy was recommended and completed (Tr. 401).  On
October 19, 2010, Dr. Atkins noted that Bryant was doing well
following his surgery (Tr. 268).  He had a small effusion;
coordination, fine motor testing, deep tendon reflexes, and
sensation were all normal.  Plaintiff had full extension and
flexion of 120 though there was moderate tenderness over the
lateral joint lines.  Bryant was placed on light duty work
restrictions; therapy was ordered (Tr. 405-08).  On November 11,
Atkins noted Bryant was doing well with no new complaints;
Plaintiff was placed at maximum medical improvement and told he
could return to work without restrictions (Tr. 269).  The Doctor
noted a two percent partial permanent impairment rating of the
right lower extremity.

On October 27, 2010, Dr. Wesley L. Spruill, at The
SpineCare Center, found that Plaintiff had ROM limitation of the
cervical spine with full equal ROM, sensation, and strength in
both upper extremities (Tr. 403-04).  He had negative straight
leg raise bilaterally with some low back and buttock pain, but
with no radicular symptoms; he had low back pain on flexion and
extension.  The Doctor's impression was L4-5 and L5-S1
degenerative disc disease with small non-impinging L4-5 disc
protrusion.  On November 2, Spruill gave Plaintiff an epidural
injection in the L4-5 area (Tr. 318-19).  A week later, a second

injection was administered (Tr. 320-21).

On November 24, 2010, Plaintiff still complained of back pain; Dr. Roberts noted that Bryant had had knee surgery and been released back to work for that impairment (Tr. 278-81). Plaintiff had normal ROM in the thoracic spine and gross normal ROM in the lumbar spine with no significant pain; he reported no recent or current radicular pain into the posterior thigh. The Doctor restricted Bryant to seventy-five pounds maximum lifting following an osteopathic manipulative treatment.

On December 16, Dr. Spruill noted Plaintiff's complaints of continued mid and low back pain, radiating into the left leg; he rated his pain as nine on a ten-point scale (Tr. 325-29). The Doctor noted that the thoracic and lumbar exams were normal though there was mid-thoracic tenderness at T6-8. Spruill gave Bryant another injection of Toradol[7] and Robaxin (Tr. 322-23, 329). On January 11, 2011, Bryant reported his pain was twenty percent better, and was not radiating, rating it at seven but at nine at its worst; the Doctor noted increased pain with lumbar flexion at sixty degrees and extension at fifteen degrees (Tr. 338, 340-43). Muscle strength in the legs was 5/5 bilaterally; thoracic tenderness continued. Straight leg raise was negative.

---

[7]*Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

Physical therapy and Ultram[8] were prescribed.  On March 23,
Bryant reported that his pain was fifty percent better, rating
it as level four, and was aggravated by standing or sitting too
long (Tr. 344-47).  Noting that Plaintiff had degenerative disc
disease with continued low back pain, Spruill found that he had
no lower extremity symptoms and no weakness; the Doctor found
that Plaintiff had reached maximum medical improvement and
placed no work restrictions on him.

On May 5, 2011, lumbar spine x-rays showed no instability
or spondylolisthesis though there was disc space narrowing at
L5-S1 (Tr. 373).

On May 20, Bryant stated his low back pain was at eight,
but denied it was radiating into his lower extremities (Tr. 350-
54, 366-67).  The Doctor noted no edema, erythema, or atrophy in
the bilateral lower extremities; straight leg raise was negative
bilaterally.  Plaintiff was given an epidural injection.

On June 15, an MRI of the lumbar spine, when compared to
one taken nine months earlier, showed Plaintiff had slight
progression of disease at L4-5 with equivocal impingement of the
descending nerve roots, right greater than the left (Tr. 360).

On June 23, Dr. Bryan S. Givhan, Neurosurgeon, found Bryant
to have 5/5 strength in all muscle groups in upper and lower

---

[8]**Error! Main Document Only.***Ultram* is an analgesic "indicated for
the management of moderate to moderately severe pain."  *Physician's
Desk Reference* 2218 (54th ed. 2000).

extremities; he had a negative straight leg raise test and a negative Patrick's maneuver (Tr. 363-64).  Plaintiff's back showed some mild pain to palpation in the lumbar, especially on the right about L4-5; he had mild pain flexion and extension, but no obvious paraspinous spasm.  Givhan recommended continued conservative treatment and "work at any level his pain will allow" (Tr. 364).

On August 15, 2011, Dr. Spruill reported Plaintiff's complaints of pain at level eight; his examination revealed nothing different than the prior exam (Tr. 368-72).  The Doctor declared Bryant to have reached maximum medical improvement and continued previous work restrictions of lifting no more than seventy-five pounds.  On November 7, Plaintiff reported his pain at seven, worse with sitting or standing too long; Spruill noted low back pain on flexion and extension (Tr. 502-03).  Straight leg raise on the left caused leg pain while on the right, it caused buttock pain; the Doctor prescribed Chlorzoxazone,[9] Nucynta,[10] and an NSAID.  On January 30, 2012, Plaintiff stated that his pain had been forty percent better until he ran out of his prescriptions; he rated his pain at nine (Tr. 497-501).  Spruill noted pain on flexion and extension in the lumbar; he

---

[9]*Chlorzoxazone* is a skeletal muscle relaxer, used in combination with rest and physical therapy.  *See* http://www.drugs.com/cdi/parafon-forte-dsc.html
[10]*Nucynta* is a narcotic used to treat moderate to severe pain. *See* http://www.drugs.com/nucynta.html

prescribed Relafen[11] and Skelaxin.  On April 5, 2012, Bryant
stated there was no change in his pain—a constant level eight;
the Doctor noted lumbar pain increased with flexion and
extension with tenderness in the thoracic and mid lumbosacral
regions (Tr. 485-96).  Hand grip strength was full bilaterally;
there was low back pain at L3-S1 with straight leg raise along
with mild leg pain.  Spruill's impression was that Plaintiff's
"[q]uality of life [had] improved, pain levels [were] reduced
and daily activities [had] increased" with treatment (Tr. 490).
Ultram was prescribed over Relafen.  On June 27, following a
non-remarkable exam, Dr. Spruill prescribed a TENS unit (Tr.
473-84).

On August 3, Dr. Timberlake saw Bryant for complaints of
lower back pain and depression; noting tenderness in the lumbar-
sacral area, the Doctor prescribed Lortab,[12] Amitriptyline,[13] and
a steroid (Tr. 418-19).  The Doctor stated that Plaintiff was
completely and totally disabled to do gainful work now or in the
future.

---

[11]**Error! Main Document Only.**_Relafen_ "is indicated for acute and
chronic treatment of signs and symptoms of osteoarthritis and
rheumatoid arthritis."  _Physician's Desk Reference_ 2859 (52nd ed.
1998).
[12]**Error! Main Document Only.**_Lortab_ is a semisynthetic narcotic
analgesic used for "the relief of moderate to moderately severe pain."
_Physician's Desk Reference_ 2926-27 (52nd ed. 1998).
[13]**Error! Main Document Only.**_Amitriptyline_, marketed as _Elavil_, is
used to treat the symptoms of depression.  _Physician's Desk Reference_
3163 (52nd ed. 1998).

On September 25, 2012, Dr. Spruill examined Bryant for increased pain in the right sacroiliac region and low back; there was no problem with leg weakness or numbness (Tr. 461-70). Spruill stated that Bryant's lumbar exam was normal though there was pain with flexion at forty-five degrees and extension at ten degrees; there was tenderness at the mid lumbosacral region and in the right sacroiliac joint.  Muscle strength was 4/5 in the hands and legs bilaterally; straight leg raise was negative bilaterally.  Medications were continued.  On October 19, 2012, the Doctor gave Plaintiff an epidural injection (Tr. 457-60). On December 3, Bryant rated his back pain as six generally and nine at its most intense; he said the pain was twenty percent better since the last injection and his daily activities had increased (Tr. 445-56).  Spruill noted that the cervical, thoracic, and lumbar spine exams were normal though there was tenderness of the Myofascial trigger point on the right and left at L4-5; there was normal ROM bilaterally in all extremities. There was no change in treatment.  On March 4, 2013, Spruill noted decreased ROM and increased pain with flexion and extension in the lumbar spine; right leg strength was decreased (Tr. 435-44).  Straight leg raise was positive on the right at sixty degrees.  The Doctor's impression, however, was that Bryant's "[q]uality of life [was] improved, pain levels reduced and daily activities increased due to current medical regimen;"

he prescribed Toradol (Tr. 438).

On March 12, 2013, an MRI of the lumbar spine demonstrated, overall, no significant change since the June 15, 2011 MRI (Tr. 504-05).

On April 3, Dr. Timberlake reported Plaintiff's complaints of low back pain and that he was seeking a nerve block; Nucynta and Chlorzoxazone were prescribed (Tr. 429-30).

On April 4, following a routine examination, Dr. Spruill gave Bryant an epidural injection for low back pain with lower limb radiculitis; he prescribed Oxycodone with no refills. (Tr. 525-38).

On April 17, Dr. Timberlake gave Plaintiff a Toradol injection (Tr. 427-28).

On April 24, Dr. Timberlake completed a form indicating that Plaintiff was capable of sitting for two, and standing or walking for one hour during an eight-hour day; he could lift and/or carry five pounds occasionally to one pound frequently (Tr. 424).  Bryant would be capable of gross and fine manipulation, operating motor vehicles, and working with or around hazardous machinery occasionally and could engage in pushing and pulling movements (arm and/or leg controls), climbing, and balancing only rarely; he could never bend, stoop, or reach.  It was Timberlake's opinion that Plaintiff would be absent from work more than three times a month because of his

11

impairments or treatment.  The Doctor also completed a questionnaire on that same date indicating that Bryant's pain was profound, intractable, and virtually incapacitating; he further indicated that activity would increase his pain to such an extent that he would have to take medication or get bed rest (Tr. 425).  Plaintiff's pain would prevent him from maintaining attention, concentration, or pace for periods of at least two hours; medications for his pain would severely limit his ability to perform simple tasks.

On May 17, 2013, Dr. Timberlake re-prescribed Lortab or Tylenol #3[14] and Amitriptyline and encouraged back exercises and hot soaks twice daily (Tr. 542-43).

On May 19, Bryant told Dr. Spruill that his low back and buttocks pain was sixty percent better since the injection a month earlier; he rated his pain at seven with levels of ten (Tr. 507-24).  The doctor noted increased right leg pain and weakness and stated that he did not recommend "prolonged bed rest for over two days due to pain" (Tr. 515).

On July 15, Bryant complained to Dr. Timberlake of extreme right chest and abdomen pain of several seconds duration; the Doctor noted soft but mild-to-moderate tenderness that he diagnosed to be Costochondritis for which he prescribed

---

[14]**Error! Main Document Only.***Tylenol* with codeine is used "for the relief of mild to moderately severe pain."  *Physician's Desk Reference* 2061-62 (52nd ed. 1998).

Ibuprofen (Tr. 550-51).  No mention of back pain was made.  On December 23, 2013, Plaintiff complained of a cough and congestion (Tr. 548-49).

In his decision, the ALJ denied benefits, determining that although Bryant could not return to his past relevant work, there were specific light and sedentary jobs that he could perform (Tr. 17-26).  In reaching this determination, the ALJ summarized the medical evidence before finding that Plaintiff's claims of incapacitating pain were not credible (Tr. 20-21), a finding that is unchallenged in this action (*see* Doc. 13).

The ALJ also discredited Dr. Timberlake's finding that Bryant was disabled, leading to Plaintiff's first claim herein (Tr. 24).  The Court notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[15] *see also* 20 C.F.R. § 404.1527 (2015).

One reason the ALJ gave for discrediting Timberlake was the paucity of the evidence.  Specifically, the ALJ noted that there was no evidence that the Doctor had seen Bryant prior to August 2012 though the records described him as an established patient

---

[15]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

(Tr. 24; *cf.* Tr. 418).

The Court notes that the record indicates that Timberlake proclaimed Bryant disabled based on his finding of moderate tenderness in the lumbo-sacral area following a single, otherwise non-remarkable, examination.  While it is true that Timberlake followed this disability pronouncement, eight months later, with a pain form and physical capacity evaluation that provided an opinion as to Bryant's inability to work (*see* Tr. 424-25), the Court finds that there is substantial support for the ALJ's conclusion that there is no objective evidence in Timberlake's own notes to support his conclusion; Plaintiff admits as much in his brief (Doc. 13, p. 4) ("While Dr. Timberlake's records themselves may not feature the objective findings the ALJ seeks, the totality of the evidence supports his opinion, so it should be given great, if not controlling, weight").  Bryant references evidence provided by Drs. Spruill and Timberlake that the ALJ did not summarize though it appears in the list of exhibits before him at the time his decision was entered (Doc. 13, pp. 4-5; *cf.* Tr. 30).

However, the Court finds otherwise.  The Court has considered those records and notes that Spruill never retracted his finding that Plaintiff had reached maximum medical improvement and could return to work, limiting him only to lifting seventy-five pounds (Tr. 372).  While it is true that

14

Dr. Spruill continued to examine him quarterly, the records show, essentially, that the changes exist more in Bryant's reporting of his symptoms than the Doctor's examination notes. The Court further notes that the most recent MRI (Tr. 504-05)—apparently unseen by the ALJ—provides no support for a disability finding, bolstering Dr. Spruill's silence on the issue.  Plaintiff's failure to point to specific, objective evidence of disability from any source belies his assertion of it.

Bryant next claims that the ALJ violated the HALLEX[16] in improperly taking telephonic testimony from an ME.  Plaintiff correctly notes that the ALJ did so in spite of being against the rules and his objection (Doc. 13, pp. 6-7).  The Government admits that the ALJ's action was error, but argues that it was harmless as using telephonic testimony was allowed by the time the decision was entered (Doc. 14, p. 6).[17]

The Court has carefully reviewed the hearing transcript and finds that, in spite of the apparent difficulty encountered at the hearing because of the use of the telephone coupled with the

---

[16]The *HALLEX*, the Hearings, Appeals and Litigation Law Manual, "is a policy manual written by the Social Security Administration to provide policy and procedural guidelines to ALJs and other staff members."  *Howard v. Astrue*, 505 F.Supp.2d 1298, 1300 (S.D. Ala. 2007) (*citing Moore v.* Apfel, 216 F.3d 864, 868 (9th Cir. 2000).

[17]The Parties agree that the evidentiary hearing was conducted on May 29, 2013, the use of telephonic testimony was allowed beginning on June 20, 2013, and the ALJ's decision was entered on June 27, 2013 (Doc. 13, pp. 6-7; Doc. 14, pp. 5-6; Tr. 26).

other participants video-conferencing from two different cites,
Bryant did have the opportunity to question the ME regarding the
evidence (Tr. 33-63).  While ALJ Michael L. Levinson's flouting
of the rules was wrong, it is not reversible error as the Court
has discovered no discernible harm to Plaintiff.[18]  This claim is
of no merit.

Finally, Bryant argues that the opinions of the ME were
based on an incomplete record (Doc. 13, p. 8).  More
specifically, Plaintiff asserts there were five exhibits that
the ME did not have at his disposal to review at the time of his
testimony (*see* Tr. 435-551).

Plaintiff refers to records from Drs. Timberlake and
Spruill and an updated MRI, all reviewed herein earlier.  The
Court found that the ALJ's failure to consider the evidence was
harmless as it provided no more support for Bryant's assertions
of disability than the evidence actually reviewed.  The Court
finds that the ME's consideration of it would have made no
difference in the ultimate determination.  This claim is of no
merit.

Bryant has raised three different claims in bringing this

---

[18]The Court notes that although only a technical violation
occurred, the Court reaches its decision because there was more than
substantial evidence for the ALJ's finding that Plaintiff had the
ability to work.  Had there been less evidence supporting that
decision, and the ME's testimony been more critical to the outcome,
the Court would have reversed the decision.  Here, however, a reversal
would waste resources and be meaningless.

action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 26th day of October, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE